IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 15-cv-01964-MSK-NYW

**KELSEY OLDERSHAW, individually and on behalf of others similarly situated,**
**ELINA NAVARRO;**
**JANE STANT;**
**JAYMIE STEVENS;**
**DENISE LANDIN;**
**ARCANDRICE RATCLIFF; and**
**GEORGIA HAMREN,**

    Plaintiffs,

v.

**DAVITA HEALTHCARE PARTNERS, INC.; and**
**TOTAL RENAL CARE INC.,**

    Defendants.

## SUPPLEMENTAL OPINION AND ORDER WITH REGARD TO BIFURCATION OF CLAIMS

This Opinion and Order supplements the Court's January 18, 2017 oral ruling in which it bifurcated claims. Such ruling was made in conjunction with the Plaintiffs' Motion for Approval of Notice **(#60)** and Amended Motion for Approval of Notice **(#63)**.

### BACKGROUND

Defendant Total Renal Care, Inc. is a wholly owned subsidiary of Defendant DaVita Healthcare Partners, Inc. Both companies are based in Denver, Colorado. Total Renal Care, Inc. provides medical care at clinics located in all fifty states.

The Plaintiffs[1] are current and former employees of the Defendants. They seek to recover overtime wages for work performed outside of scheduled shift hours, on weekends, and during lunch breaks. Two types of claims are asserted – federal claims arising under the Fair Labor Standards Act ("FLSA") and state claims arising under the Colorado Wage Claim Act ("CWCA"). For the FLSA claims, the plaintiffs pursue a "collective action" under 29 U.S.C. § 216(b), and for the state claims they seek certification of a "class action" under Federal Rule of Civil Procedure 23.

The Court has approved a *Hoffman-LaRoche* notice for the FLSA claims, and a number of additional Plaintiffs have filed consents. At the same time it approved the *Hoffman-LaRoche* notice for the FLSA claim, the Court orally bifurcated the FLSA claims from the CWCA claims and directed that the FLSA claims proceed first. This Order further explains the Court's reasoning.

## **ANALYSIS**

This action, like many, couples federal claims under FLSA claims with state law claims. The Court's subject matter jurisdiction arises by virtue of the FLSA claims. 28 U.S.C. § 1331. It exercises supplemental jurisdiction over the state law claims.

The Court has broad discretion to manage actions before it, which includes discretion to bifurcate claims. *Easton v. City of Boulder*, 776 F.2d 1441, 1447 (10th Cir. 1985); *Coffeyville Res. Ref. & Mktg., LLC v. Ill. Union Ins. Co.*, 979 F.Supp.2d 1199, 1206 (D. Kan. 2013). Bifurcation is governed by Federal Rule of Civil Procedure 42(b). Under Rule 42(b), bifurcation is appropriate: (1) for convenience, (2) to avoid prejudice, or (3) to expedite and economize resolution of the matter, when doing so is not unfair or prejudicial to a party. *Angelo v. Armstrong World Indus.,*

---

[1] The action was initiated by Ms. Oldershaw. The other named plaintiffs opted-in to the action after receiving a *Hoffman-LaRoche* notice.

*Inc.*, 11 F.3d 957, 964 (10th Cir. 1993). After reflection upon the differences between the nature of and processes used for resolution of FLSA claims and CWCA claims, the Court finds that bifurcation and staged presentation of the claims is appropriate.

## I. The Differences between FLSA and CWCA claims

Although FLSA and CWCA claims both address minimum wage and/or overtime violations, they provide different substantive remedies and employ different procedural mechanisms. Substantively, the FLSA requires that employers pay non-exempt employees federal minimum wage, currently $7.25 an hour, and one and one-half times their regular hourly rate for any hours worked in excess of 40 hours in a single work week. 29 U.S.C. §§ 206(a), 207. An employer who fails to do so is liable to its employees for the unpaid wages plus liquidated damages that include costs and attorney's fees. 29 U.S.C. § 216(b). In contrast, the CWCA requires employers to pay non-exempt employees the Colorado minimum wage, currently $9.30 an hour, and one and one-half times their regular hourly rate for any hours worked in excess of 40 hours in a single work week, 12 hours in a single work day, or 12 consecutive hours, excluding duty-free meal periods, whichever results in the greatest calculation of wages. Colo. Rev. Stats. §§ 8-6-104–06; 7 Colo. Code. Regs. §§ 1103-1:3, 1:4. An employer who fails to do so is liable to its employees for the unpaid wages as well as costs and attorney's fees. Colo. Rev. Stats. §§ 8-6-118; 7 Colo. Code. Regs. § 1103-1:18.

Each statutory source anticipates that multiple employees or former employees may assert claims in a single action, but a different mechanism is used for each claim. For FLSA claims, a "collective action" is used. A "collective action" is described as one that "may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). But beyond this description, neither

3

the FLSA nor any federal rule of procedure addresses how a "collective action" is to be administered. CWCA claims brought in federal court can also be pursued in a single action, but not as a "collective action". They are pursued, instead, as a "class action" in accordance with Fed. R. Civ. P. 23.

For many years, courts and counsel have treated the FLSA "collective action" as the functional equivalent of a Rule 23 "class action" but with slightly modified certification requirements.[2] But in 2013, the United States Supreme Court identified important differences between a FLSA "collective action" and a Rule 23 "class action". In *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529-31 (U.S. 2013), the Supreme Court was presented with an FLSA "collective action" in which all potential "opt-in" plaintiffs had settled without joining the suit, and the named plaintiff had been presented with a Rule 68 offer sufficient to satisfy her individual claim. The named plaintiff refused to accept the Rule 68 offer in reliance on Rule 23 jurisprudence. She argued that as the representative plaintiff, her interest in the action (and therefore her recovery) extended beyond her individual claim. The Court disagreed, holding that the named plaintiff's claim was moot.

At first blush, the *Genesis* holding does not appear remarkable; after all, the named plaintiff was offered the amount of her possible recovery under the FLSA. However, the Court's reasoning reveals important distinctions between a FLSA "collective action" and a Rule 23 "class action". The Court explicitly concluded that a named plaintiff in an FLSA action has no interest in the "collective action" beyond her individual claim because no separate legal entity is created.

---

[2] *See, e.g. Wilkerson v. Martin Marietta Corp.*, 875 F. Supp. 1456 (D. Colo. 1995); *Shushan v. Univ. of Colo.*, 132 F.R.D. (D. Colo. 1990); *Pietrzycki v. Heights Tower Serv., Inc.*, 197 F. Supp. 3d 1007 (N.D. Ill. 2016); *Church v. Consol. Freightways, Inc.*, 137 F.R.D. 294 (N.D. Cal. 1991); *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399 (E.D. Tex. 1999).

This is fundamentally different from a "class action" in which certification creates a "plaintiff class" which is then represented by the named plaintiff and plaintiff's counsel. In an FLSA "collective action" every named and "opt-in" plaintiff pursues his or her individual claim. *See Almanzar v. C&I Assocs., Inc.*, 175 F. Supp. 3d 270, 279 n.3 (S.D.N.Y. 2016); 7B Charles Alan Wright, Arthur R. Miller, Fed. Prac. & Proc. § 1807 (3d ed. 2011)

There are several logical corollaries to this distinction. First, the applicable statute of limitation is calculated differently. In a FLSA "collective action", it is individually calculated with regard to each plaintiff based on the date when the plaintiff joins the action, either as the original named plaintiff or the date the plaintiff "opts-in" by filing a consent. In a Rule 23 "class action", however, a single calculation of the statute of limitation applies to the "plaintiff class" based on the date the action is filed. *Compare* 29 U.S.C. § 256 *with Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 551-52 (1974). Second, the FLSA "collective action" acts much like a civil suit with many plaintiffs who pursue their own claims. They may have different counsel, make different pre-trial decisions, may settle on different terms or some may settle and others go to trial. In contrast, in the Rule 23 "class action", the representative plaintiff(s) and class counsel act for the class.

Reflecting upon the teachings of *Genesis*, the thoughts of other courts, and the writings of legal scholars,[3] this Court is convinced that the differences between an FLSA "collective action"

---

[3] *Turner v. Chipotle Mexican Grill, Inc*., 123 F.Supp.3d 1300 (D. Colo. 2015) is illustrative. In *Turner,* Judge Kane analyzed the history and intent behind the FLSA § 216(b) process and concluded that there was unnecessary confusion between, and conflation of, FSLA "conditional" certification and "class certification" under Rule 23. *See also Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 222-27 (3d Cir. 2016); *Vazquez v. Grunley Const. Co.*, 200 F.Supp.3d 93, 97-98 (D. D.C. 2016); *Perez v. DeDomenico Pizza & Rest., Inc.*, 204 F.Supp.3d 494, 495-96 (E.D.N.Y. 2016); *McClendon v. U.S.*, No. 12-81c, 2013 WL 285584 (Fed. Cl. Jan. 24, 2013); 7B Charles Alan Wright, Arthur R. Miller, Fed. Prac. & Proc. § 1807 (3d ed. 2011); Scott A. Moss &

and a Rule 23 "class action" make the simultaneous consideration of both types of claims unworkable, inconvenient, costly and potentially prejudicial to some employee plaintiffs. Examples of the conflicts between the FLSA "collective action" and state law claim "class action" follow.

## A. Certification

Certification occurs in both the "collective action" and the "class action", but its meaning and effect differs. In this respect, the Court agrees with the careful and thoughtful reasoning of Judge Kane in *Turner v. Chipotle Mexican Grill, Inc.,* 123 F.Supp.3d 1300 (D. Colo. 2015) that "conditional certification" in a "collective action" is somewhat of a misnomer.

With regard to FLSA claims, "conditional certification" is the vehicle by which a court authorizes a named plaintiff to give a *Hoffman-LaRoche*[4] type of notice to other employees or former employees. *Genesis Healthcare Corp.*, 133 S. Ct. at 1530. The purpose of the notice is to alert potentially aggrieved individuals that they can join the lawsuit by filing a written consent. *Hoffman- LaRoche*, 493 U.S. at 169-74. Giving this notice early in the case helps protect the rights of employees and former employees because filing of the consent tolls any statute of limitation. Consonant with the notice's limited purpose, the standard for court approval is lenient. A court need only find that there are substantial allegations that individuals other than the named plaintiff(s) were victims of a single decision, plan, or policy of the defendant employer. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F. 3d 1095, 1102 (10th Cir 2001). After discovery is

---

Nantiya Ruan, *The Second-Class "class action": How Courts Thwart Wage Rights by Misapplying "class action" Rules,* 61 Am. U. L. Rev. 523 (2012); Allan G. King, Camille C. Ozumba, *Strange Fiction: The "Class Certification" Decision in FLSA "collective action"s,* 24 Lab. Law 267 (2009)

[4] *Hoffman-La Roche v. Sperling*, 493 U.S. 165 (1989). *Hoffman-La Roche* was an Age Discrimination in Employment Act ("ADEA") case. The ADEA expressly incorporates the FLSA's enforcement provisions.

completed, a court may be asked to determine whether the plaintiffs who "opt-in" are similarly situated pursuant to 29 U.S. C. § 216(b).

In contrast, certification of a class under Rule 23 is more significant and serves an entirely different purpose. Rule 23 class certification creates an entirely new legal entity – a class of unnamed plaintiffs – whose interests generally are represented by "class counsel" and the named plaintiff(s). Fed. R. Civ. P. 23(g); *Genesis Healthcare Corp*, 133 S. Ct. at 1230. Among the prerequisites for class certification is the requirement that the number of potential plaintiffs is so large that they cannot individually join in the action (which is contrary to the concept of "opting in" to an FLSA action) and that the named plaintiffs and class counsel (called representative parties) will fairly and adequately protect the interests of class members. Fed. R. Civ. P. 23(b), (c)(3), (e) & (g).

### B. "Opting-in" and "Opting-out"

The manner in which individuals join and participate in an FLSA "collective action" and a Rule 23 "class action" also differs. In the FLSA "collective action", an employee or former employee joins the action by "opting- in", the euphemism for filing a consent with the court. The consent acts to identify the employee's individual claim. 29 U.S.C. § 216(b); *Genesis Healthcare Corp,* 133 S. Ct. at 1530. Claims of potential plaintiffs who do not "opt-in" are unaffected by the lawsuit. Thus the affirmative act with regard to FLSA "collective actions" is to join the action.

In contrast, all potential plaintiffs who fall within the description of a Rule 23 class are presumed to be members of the "plaintiff class" unless they "opt-out". For some types of classes there is no right to "opt-out". *See* Fed. R. Civ. P. 23(c)(2)(B)(v), (vii). If a member of a Rule 23 class fails to "opt out", he or she is bound by the outcome of the litigation. Thus, the affirmative

7

act with regard to a "class action" is to refuse to participate in the action.

## C. Role in the lawsuit

As noted in *Genesis*, in an FLSA "collective action" every plaintiff, original or "opt-in", is free to pursue his or her individual claim. Although *Genesis* does not delineate all of the implications of this, some are logically apparent. Arguably, each plaintiff can choose his or her counsel[5], accept or reject a settlement proposal, and decide to go to trial. In these respects, an "opt-in" plaintiff is no different from the original plaintiff who filed the Complaint. The "opt-in" plaintiff may choose to ride on the coattails of the original plaintiff or be represented by the counsel for the original plaintiffs, but he or she is not obligated to do. *See Almanzar*, 175 F.Supp.3d at 279 n.3; 7B Charles Alan Wright, Arthur R. Miller, Fed. Prac. & Proc. § 1807 (3d ed. 2011).

In contrast, individual members of a Rule 23 class do not individually participate in the case. Indeed, some may not even be known at the time the matter goes to trial or settlement terms are agreed to. Because the class is represented by the "class representative" and "class counsel", short of opting out of the class or moving to intervene, an individual plaintiff has few means to control disposition of his or her individual claim. *See e.g. Guthrie v. Evans*, 815 F.2d 626, 628 (11th Cir. 1987), *rev'd by Delvin v. Scardelletti*, 536 U.S. 1, 14 (2002) (suggesting that class members who disagree with the representative plaintiff's decisions must move to intervene if they wish to be heard).

---

[5] *See Snively v. Peak Pressure Control, LLC*, 174 F. Supp. 3d 953, 962 (W.D. Tex. 2016); *Rosario v. Valentive Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 520 (E.D.N.Y. 2011); *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 486 (S.D.N.Y. 2016). In contrast, only one of the three types of Rule 23 classes gives class members the right to retain independent counsel. Fed. R. Civ. P. 23(c)(2)(B)(iv).

### D. Settlement

Due to the differing degrees of plaintiff autonomy, how settlement is accomplished may differ in an FLSA "collective action" and a Rule 23 "class action". In a "class action", negotiations are more streamlined because they conducted with the class representative and class counsel, but because the members of the class have no input, any settlement requires court approval.

In a FLSA "collective action", however, each FLSA plaintiff is free to settle or litigate his or her own claim regardless of what the original plaintiff or his/her counsel does. As a result, each plaintiff is empowered to assess the merits and drawbacks of a settlement proposal, but there is a risk that no global settlement will be reached. In light of the increased autonomy that plaintiffs in a "collective action" have, this Court and others have begun to question whether settlements of "collective action" claims should require court approval, or whether they should be treated as would a settlement in any other action with multiple plaintiffs. *See e.g. Martinez v. Bohls Bearing Equip. Co.*, 361 F.Supp.2d 608, 618-31 (W.D. Tex. 2005); *Ruiz v. Act Fast Delivery of Colo.*, Case No. 14-cv-00870-MSK-MJW, Docket # 132 (D. Colo. Jan. 9, 2017). In multi-plaintiff actions, judicial approval of a settlement agreement is not required except when stated by statute, and there is no express requirement in 29 U.S.C. § 216 that a court approve an FLSA settlement.

### II. Difficulties in administration of cases involving both FLSA "collective action" claims and Rule 23 "class action" state law claims

The inherent differences between a FLSA "collective action" and state law claims pursued through a Rule 23 "class action" make it difficult to fashion appropriate procedures to protect the rights of all parties. This becomes readily apparent when comparing the contents of a *Hoffmann-La Roche* notice used in FLSA claims with a notice given with regard to Rule 23 class. Both notices

are intended to advise employees and former employees as to their rights, but because those rights are different, the disclosure is also different.

The *Hoffmann-La Roche* notice usually comes early in the suit. It describes the nature of the FLSA "collective action", the FLSA claim and remedies, and offers the recipient the opportunity to "opt-in" to the action by filing a consent. It often advises recipients of their right to be represented by counsel for the original plaintiff, to obtain independent representation, or to participate *pro se*. It may also describe certain rights of an "opt-in" plaintiff (including the right not to be bound by a settlement that the original plaintiff advocates). It will explain that if the employee does not "opt-in" the action, the employee will not benefit from any recovery obtained therein, but the employee can pursue an independent action or otherwise assert a claim.

None of these advisements are applicable to a Rule 23 notices with respect to state law claims. The Rule 23 notice often is ssued later in a lawsuit, and sometimes only after a settlement has been negotiated. Such notices also describe the rights and remedies available to the employee, but based on state law (which may differ from FLSA) and Rule 23. The notice will state that the class is represented by the named plaintiffs and class counsel and advise that the employee need do nothing to participate in the class. In the absence of action, the employee will be deemed to be a member of the class and will be bound by the outcome of the suit. The only affirmative act for the employee would be to "opt-out" of the class, in which event he or she will not benefit from the lawsuit, but may bring an individual one. Fed. R. Civ. P. 23(c)(2); *Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1171-74 (10th Cir. 2016). If the notice also addresses a settlement, it may contain information as to the amount of the settlement and how it will be distributed, such as whether the representative parties and counsel will receive a portion of the settlement.

The problem in a FLSA lawsuit with parallel state law claims is that employees may have both federal and state claims, but notices pertaining to the claims will have inconsistent provisions. If a single notice *Hoffmann-La Roche* and Rule 23 purposes is anticipated , the necessary information may be complex and confusing. [6]   This problem may also occur if separate notices are sent to an employee within a short period of time. Not only must the recipient confronted with the differences between FLSA claims and state claims and "collective actions" and "class actions, the complex interplay between the claims can be important as well.   There are at least 4 possibilities, for which a recipient may need advisement:

| **"opt-in" FLSA and No Action state claim** | **No action FLSA and No Action state claim** |
|---|---|
| ("opt-in" plaintiff for FSLA claims and member of class for state law claims) | (no participation for FLSA claims but member of class for state law claims) |
| **"opt-in" FLSA and "opt-out" state claim** | **No action FLSA and "opt-out" state claim** |
| (participate as to FLSA claims but not a class member for state law claims) | (No participation on FLSA or state law claims) |

A single notice or sequential notices run the risk of being overly complex, confusing and apparently contradictory. For example, the notice might advise that an employee must "opt-in" to participate in the FLSA claims, but the employee is automatically deemed to be a participant in the "class" for state law claims unless he or she opts-out. Or it might instruct that the employee will be represented by class counsel as to state claims but can be represented by his or her own attorney as FLSA claims. In addition, the Notice might reflect that action must be taken as to some claims or they will expire; but no action need be taken as to others.

---

[6] None of the proposed notices tendered by parties in other combined FLSA-CWCA cases have clearly, simply, and comprehensively addressed all of the information necessary to fully advise an employee with regard to both federal and state law claims. Indeed, the Court has been similarly unsuccessful in drafting an appropriate notice.

Case administration complications are not limited to the notice conundrum, however. In a FLSA "collective action" some plaintiffs may be represented by the original plaintiff's attorney, others may have independent counsel and others may appear *pro se*. If the plaintiffs simultaneously pursue state law claims, they are likely represented by "class counsel"[7]. In such event, it may become difficult or confusing as to who acts for whom, and because the state and federal claims overlap to some degree it is possible that an attorney representing an employee on the FLSA claim could take a different posture that the "class counsel" representing the same employee on the state claim. This confusion can be compounded different state laws are brought into play because employees who worked for the Defendant in different states. Separate Rule 23 classes class may be required for each state in which employees worked.

Settling claims can also be complicated. The attraction of settlement for a defendant is that it caps its losses. But although state claims might be settled through negotiations with a class representative and be subject to court approval, FLSA claims may have to be negotiated individually, without court approval and with the risk that any plaintiff who does not settle may proceed to trial. Further, the timing of settlement of FLSA claims might differ from that of state law claims. For example, Employee A who has opted in with regard to FLSA and who has not opted out with regard to the state claims may desire settle all of his or her claims with the Defendant employer before other employees are ready to do so. Employee A can do so with regard to the FLSA claims, but not with regard to the state claims except through a class settlement approved by the Court.

---

[7] Fed. R. Civ. P. Rule 23 authorizes "class action" under three circumstances. Rule 23(b)(1)-(3). In all of these circumstances, the Rule anticipates the appointment of class counsel. Rule 23 (c)(1)(B), (g). However, in the third type of class, an attorney may enter an appearance on behalf of a class member.

### III. Benefits of Bifurcation

Admittedly, not all of the problems described above will occur in every case. In this case, however, there has been confusion with regard to the *Hoffman LaRoche* notice, and counsel for the original plaintiff assumed that such representation would extend to all FLSA "opt-in" plaintiffs as would occur under with a Rule 23 class. In addition, the plaintiffs now wish to employees who have worked for the Defendant at clinics outside of Colorado. If appropriate, a second *Hoffman LaRoche* can be given with regard to the FLSA claims, but state law claims may arise under the laws of various states. This could require creation of a number of Rule 23 classes.

The Court finds that these difficulties are best addressed by bifurcating the FLSA claims from the state law claims, and sequencing their determination. The Court will begin with the FLSA claims and stay all state law claims until the FLSA claims are resolved.

Proceeding with the FLSA claims prior to the state law claims accomplishes several objectives. First, it best preserves the rights of the employees with regard to statutes of limitation. Early issuance of a *Hoffman LaRoche* allows early consent to the suit, the operative date for statute of limitation determination for FLSA claims. With regard to the state law claims, calculation of the statutes of limitation applicable to a "plaintiff class" remains unaffected. Second, many of the factual issues inherent in FLSA and state law wage claims are the same – for example, who worked when and what compensation was paid. Determination of these issues with regard to the FLSA claims may have preclusive effect with regard to the state claims. This also may be true with regard to the frequently contested issue as to whether a particular employee is exempt may only need to be resolved once, as federal and state statutes recognize many of the same exemptions. Finally, there are visceral (if not necessarily intellectual) justifications for beginning with FLSA claims. These are the claims for which the Court has subject matter jurisdiction. Absent FLSA claims, the

13

plaintiffs could proceed in state court. In addition, employees who go through the effort to affirmatively "opt-in" to the FLSA claims arguably should have those claims prioritized as compared to employees whose involvement in a Rule 23 class is entirely passive. Thus, bifurcation and sequential litigation of the claims, with the FLSA claim proceeding to resolution before the state law claim is addressed, serves the values of convenience and efficiency.

The Court has asked whether there will be undue prejudice to any party, and the parties have identified none. The only criticism raised is that bifurcation may make comprehensive settlement more difficult to achieve. That is, it may be difficult for plaintiffs to settle both federal and state law claims simultaneously if the state law Rule 23 class certification proceedings have not begun. To some extent, this is a cart-before-the-horse kind of problem – unless and until a class is certified, there is no class for the plaintiff to represent and thus, no class-based relief to be obtained. But even that issue has a solution through the "settlement only" class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1997). If the parties reach a settlement of both the FLSA and state law claims simultaneously, they can request that the Court entertain the class certification question solely for the purposes of effectuating the settlement. The parties may wish to devote their settlement efforts solely towards the FLSA plaintiffs who affirmatively opt in, or they may instead attempt a global settlement while litigating only the FLSA claims. Nothing in the bifurcation and sequential trial scheme precludes or hinders either approach.

Accordingly, it is the Court's intention to handle this and other actions that include FLSA and state law claims using bifurcation and sequential determination. Upon the filing of such cases, the Court will *sua sponte* bifurcate the FLSA and state law claims, staying litigation of the latter until the former are fully resolved. In a situation in which a party can show that it would be more efficient to litigate the claims simultaneously, in part or whole, that party may move for relief from

the bifurcation or otherwise seek reconsideration.

## CONCLUSION

For the foregoing reasons, the Court hereby **BIFURCATES** the Plaintiffs' FLSA claims from the CWCA claims. Proceedings with regard to the CWCA claims are stayed until the FLSA claims have been fully resolved, at which time, the stay will lift and litigation of the CWCA claims can proceed.

DATED this 1st day of June, 2017.

**BY THE COURT:**

Marcia S. Krieger
United States District Court